John E. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

In the Matter of the complaint issued by the Interim Administrator that MAGAZINE DISTRIBUTORS, INC. and MDI Distributors, Limited Partnership the successor in interest of Imperial News Company, Inc., are in violation of the terms of the Settlement Agreement pursuant to Patterson, et al. v. NMDU, et al., 73 Civ. 3058(WCC) and 73 Civ. 4278(WCC), U.S.D.C., S.D.N.Y.

Nos. 73 Civ. 3058 (WCC), 73 Civ. 4278 (WCC). Claim No. 274.

United States District Court, S.D. New York.

May 7, 1996.

William S. Ellis, Interim Administrator, Forsythe, Holbrook, Patton, Bovone, Seward & Ellis, New York City, O'Connor & Mangan, P.C., Mineola, New York, for Defendant NMDU (J. Kenneth O'Connor, of counsel).

Goodkind Labaton Rudoff & Sucharow L.L.P., New York City, for Magazine Distributors, Inc. and MDI Distributors, Limited Partnership (Brian D. Caplan and Jonathan Gardner, of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

In 1973, a class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions against the Newspaper and Mail Deliverers' Union of New York and Vicinity (the "NMDU") and more than fifty news publishers and distributors within the NMDU's jurisdiction. Both suits charged that the NMDU, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the NMDU's collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an opinion and order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* 384 F.Supp. 585 (S.D.N.Y.1974), *aff'd,* 514 F.2d 767 (2d Cir. 1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implemented an affirmative action program which modified the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. The Settlement Agreement also established an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and to supervise its performance. The Settlement Agreement authorizes the Administrator to hear claims concerning violations of the Consent Decree. Appeals from his decisions are heard in this Court.

■ Defendant seeks review of a determination by Administrator William S. Ellis, Esq. (the "Administrator"), denominated "Claim 274," denying defendant's motion to dismiss. Because the Administrator has not ruled yet on the merits of Claim 274, and because the Settlement Agreement does not provide for interlocutory appeals, we dismiss the appeal as premature. However, to facilitate further proceedings on this claim, the Court will comment on the issues raised by the motion for guidance of the parties and the Administrator.

## BACKGROUND

Imperial News Co. ("Imperial"), a wholesale distributor of magazines and paperback books for markets in Nassau, Suffolk, lower Westchester and in parts of Fairfield County, Connecticut, was a party defendant in *Patterson* and a signatory to the Settlement

Agreement. For many years, Imperial conducted its business out of a facility in Melville, New York. The NMDU represented some, but not all, of the drivers and warehouse employees at Imperial. Of its 96 NMDU-represented employees, 19 (or 19.8% of the total) were minorities.

Magazine Distributors, Inc. and MDI Distributors, Limited Partnership (collectively, "MDI") is a Connecticut-based wholesale distributor of newspapers and periodicals and has been in business for over thirty years. Unlike Imperial, MDI is neither a party defendant in *Patterson* nor a signatory to the Settlement Agreement. Prior to December 1990, MDI operated exclusively out of Connecticut and competed with Imperial in Long Island from its Connecticut base.

In November 1990, Local 917 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("Local 917"), was recognized as the exclusive bargaining representative of MDI's drivers and warehousemen based in Plainville, Connecticut. The MDI–Local 917 collective bargaining agreement contained an "accretion" clause, wherein MDI agreed that if it expanded its business or opened a new facility, MDI employees at the new locations would be covered by Local 917. Also in November 1990, MDI leased a site in Hicksville, New York. In December 1990, MDI hired drivers for its Hicksville site, and recognized Local 917 as their bargaining representative.

On January 23, 1991, Imperial terminated all of its employees and ceased operations. On March 8, 1991, Imperial and MDI entered into an asset purchase agreement (the "Purchase Agreement"), with MDI purchasing substantially all of Imperial's assets. Paragraph 1.1 of the Purchase Agreement provided, *inter alia*, that:

> MDI shall purchase from Imperial, the following assets of Imperial ... subject to the MNC Lien, but otherwise free and clear of any liabilities and obligations with respect thereto, whether absolute, contingent or otherwise, and free and clear of all liens, claims, judgments, pledges, mortgages, options, interests, or other encumbrances of any kind[.]

Paragraph 1.3 of the Purchase Agreement provided that MDI would not assume any liability for, *inter alia*, Imperial's employment agreements, collective bargaining agreements, or other labor-related liabilities or obligations. The Purchase Agreement was conditioned on Imperial commencing a voluntary bankruptcy proceeding and on the entry of a Bankruptcy Court order approving the Purchase Agreement.

On April 24, 1991, Imperial filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On June 13, 1991, the NMDU filed objections to the sale, claiming that Imperial's sale of its assets to MDI was not an arms-length transaction. At the conclusion of a hearing held on July 2, 1991, Judge Conrad approved the sale in accordance with the terms and conditions set forth in the Purchase Agreement. In so doing, the Bankruptcy Court stated:

> The sale is approved. The court makes the specific finding that based upon the evidence which is before the court, that this is in the best interests of the debtor. This is an arms-length transaction....

In addition, the Bankruptcy Court Order dated July 7, 1991 provided that:

> any such claim of right, title, interest, lien or encumbrance not having been asserted in the manner set forth in the Application and Notice are hereby deemed waived and MDI shall take title to the Assets discharged, released and exonerated from such claims of right, title, interest, lien or encumbrance of all parties other than MNC....

The NMDU applied for an order staying the sale to MDI pending appeal of the Bankruptcy Court's Order. That application was denied by Judge Whitman Knapp of this Court on July 24, 1991. Subsequently, the NMDU appealed the Bankruptcy Court's approval of the sale, which appeal was dismissed as moot by Judge John S. Martin, Jr. of this Court on November 12, 1991. The Second Circuit summarily affirmed that dismissal on May 8, 1992.

In addition, the NMDU filed in August 1991 with the National Labor Relations

Board (the "NLRB") an amended unfair labor charge, claiming that MDI was a "successor" to Imperial, but its alter ego, and that MDI has maintained a "discriminatory policy" toward individuals who "had been represented by" NMDU. In a decision dated November 26, 1991, the NLRB declined to issue a complaint on the ground that the evidence adduced failed to establish that MDI unlawfully refused to provide work opportunities to Imperial employees based on union affiliation or that MDI's Hicksville facility is a successor to Imperial's operations.

The present appeal arises out of a claim filed with the Administrator by the NMDU, dated July 17, 1991, that MDI "violated" and "frustrated" the purpose and intent of the Settlement Agreement and Consent Decree by "not offering employment to the Imperial NMDU bargaining unit members" at MDI's facility in Hicksville, New York. MDI opposed the Administrator's authority to consider the claim on jurisdictional grounds, and on March 26, 1992, the Administrator issued a Determination in which he concluded that he had jurisdiction to review the NMDU's claim. This Court affirmed the Administrator's determination. *See Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 791 F.Supp. 1015 (S.D.N.Y.1992).

The instant matter arises out of that same claim. MDI has filed a motion to dismiss the NMDU's claim "to the extent that the claim filed by the [NMDU] asserts a claim for NMDU members other than minority NMDU members." Mem. of Law in Support of MDI's Motion to Dismiss ("MDI Mem."), at 1. On January 10, 1996, the Administrator issued a Determination in which he denied MDI's motion. MDI has appealed the Administrator's Determination to this Court.

MDI's principal argument is that non-minority employees are not intended beneficiaries under the Consent Decree and therefore lack standing to seek relief under the Settlement Agreement. According to MDI, since non-minority employees lack standing to pursue this claim, *see Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 772 F.Supp. 833 (S.D.N.Y. 1991), the NMDU likewise lacks standing to

assert any claim on their behalf. MDI invokes Article III constitutional limitations as well as self-imposed jurisprudential limitations in support of its contention that the Administrator should dismiss any claim asserted by NMDU on behalf of non-minorities. *See Lujan v. Defendants of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

## THE ADMINISTRATOR'S DETERMINATION

The Administrator agreed with MDI concerning the law that it cited, but raised the issue "whether such law applies to the area of activity defined and created by the terms of the Settlement Agreement." Interim Administrator's Determination, Claim No. 274 ("Admin.Determination"), at 6 (Jan. 10, 1996).

> It is suggested that there are two concentric circles of jurisdiction, one controlled by federal law, the other by the S.A.

> This is not to say that the concept of standing does not apply to the Administrator. Indeed, in CLAIM 186, the ADMINISTRATOR dismissed three claims brought by three non-minorities on the very ground of no standing. *Patterson v. Newspaper and Mail Deliverers' Union*, 772 F.Supp. 833 (S.D.N.Y.1991). Wherever a claimant has been in a position or a quasi-position of bringing a new action under Title VII in the Patterson case, then the provisions cited by MDI as to standing have been applied. However, where a claim has been totally within the context of the S.A. and the expectations and benefits granted by the S.A. to the employees of the industry, then the interpretation of the Administrator, subject to the federal rules of evidence and procedural due process, have been. controlling and have been reviewed by the District Court.

> To emphasize the point, there are two areas here. First, there is the Title VII area within which the *Patterson* case fitted on jurisdictional grounds ... and second, there is the area of the *SETTLEMENT*

*AGREEMENT.* The second area is within the context of the first area. Standing and prudential limitations apply as the guiding law in the first area. However, what may be requirements of the first area are not necessarily the requirements of the second.

Admin.Determination, at 6–7. The Administrator cited various provisions of the Settlement Agreement which affect non-minority employees, and stated that "[b]oth minority and non-minority employees ... have had the right to pursue their benefits and interests under the Settlement Agreement without meeting all the technical aspects of federal jurisdiction such as standing or being non-minority." *Id.* at 9. The Administrator thus denied MDI's motion to dismiss the NMDU's claim insofar as the NMDU sought relief on behalf of non-minority employees.

## DISCUSSION

The Settlement Agreement provides the Administrator with broad authority to take all actions he deems necessary to implement the provisions and to ensure the performance of the Consent Decree. It further provides that the Administrator shall hear and determine a wide variety of claims arising under the Agreement, which may then be brought before this Court for review. Settlement Agreement ¶ 4.

As problems have arisen since 1974, the Administrator has held hearings and issued decisions. Some of the hearings have involved industry-wide problems such as freezing the seniority lists of all companies on various occasions. Under the Consent Decree, an administrative framework has been set up to attain the goals of the Settlement Agreement, and this has required the officers and administrative staff of each company and the NMDU to deal with the Administrator and the Publisher's Association almost monthly on various matters.

MDI argues that the complaint in this proceeding is predicated solely on the allegation that MDI is a successor to Imperial, and that MDI violated the terms of the Settlement Agreement by failing to hire, after the close of Imperial's business in January 1991, NMDU members formerly employed by Imperial. MDI argues that non-minority members of the NMDU lack standing to bring a claim for a violation of the Settlement Agreement, as the Settlement Agreement was plainly not entered for their benefit but rather to end a long history of discrimination by the NMDU.

However, the Administrator concluded, based on provisions in the Settlement Agreement establishing criteria for advancement for all employees (minority and non-minority), that it must be the case that non-minority employees can be afforded redress under the Settlement Agreement. Otherwise, "all the provisions relating to non-minorities is only verbiage because they have no standing under MDI's application of the law." Admin.Determination, at 9.

As this Court previously has ruled, the Administrator has jurisdiction to hear a claim brought by the NMDU alleging that MDI has circumvented the Settlement Agreement. *See Patterson v. Newspaper and Mail Deliverers' Union,* 791 F.Supp. 1015 (S.D.N.Y.1992). As this Court expressed at the hearing prior to that decision, however, the merits of this claim are dubious. *See* Transcript of Oral Argument Before Hon. William C. Conner, at 2 (June 1, 1992). However, faced with the limited issue whether the Administrator had jurisdiction to hear the claim, this Court upheld the Administrator's determination that he did. *See id.; Patterson,* 791 F.Supp. 1015. MDI now seeks to have this claim dismissed to the extent that the NMDU purports to represent non-minority members, on the ground that any claim asserted on behalf of non-minority members is beyond the scope of the Settlement Agreement and therefore beyond the jurisdiction of the Administrator. *See, e.g., Patterson v. Newspaper and Mail Deliverers' Union,* 772 F.Supp. 833, 839 (S.D.N.Y. 1991) (dismissing three claims brought by three non-minorities for want of standing because "[t]he Settlement Agreement was not designed to resolve such claims").

The Administrator denied MDI's motion to dismiss on the ground, it seems, that whether or not non-minority employees have standing under the Settlement Agreement to assert

this claim, the Administrator's broad power to enforce the Settlement Agreement confers jurisdiction on him to decide claims that affect non-minority as well as minority employees. The Administrator distinguished this situation—a claim "totally within the context of the [Settlement Agreement]"—from a separate and new action asserted by non-minority employees under Title VII invoking provisions of the Settlement Agreement, in which case the action would be dismissed for lack of standing. *See id.*

■ Although we dismiss the appeal as premature, since we have reviewed the record and considered the arguments made on the issues involved, we believe it may be helpful to comment on these issues for the guidance of the parties and the Administrator. We agree with MDI that non-minority employees do not have standing to assert claims under the Settlement Agreement. *See id.* However, the fact that at least some of the employees whom the NMDU purports to represent are minority employees is sufficient to confer standing on the NMDU as the exclusive bargaining agent for Imperial employees. Furthermore, the NMDU is a signatory to the Settlement Agreement, and the NMDU's role has been to enforce provisions of the Settlement Agreement.

MDI's argument that non-minority employees were not intended beneficiaries under the Settlement Agreement (and therefore are not entitled to relief under the Consent Decree) eventually may win the day for MDI with respect to any relief sought on behalf of non-minority employees. However, this argument is not a jurisdictional argument on these facts; it is an argument that goes to the substance of NMDU's claim and the appropriate form and amount of relief that should be granted, if any. We only remind the parties that we have concluded already that the NMDU is the proper party, and that a hearing before the Administrator is the proper place, to bring this claim which alleges that Imperial, and therefore MDI as Imperial's successor in interest, "violated" and "frustrated" the purpose and intent of the Settlement Agreement by "not offering employment to the Imperial NMDU bargaining unit members."

There can be no dispute that the NMDU has standing to challenge an alleged breach or circumvention of the Consent Decree.

## CONCLUSION

For the foregoing reasons, the appeal is dismissed. The matter may proceed to a hearing before the Administrator to determine whether Imperial's sale of assets to MDI was made with the purpose of circumventing the Consent Decree.

SO ORDERED.